[Civ. No. 1336.  Second Appellate District.—June 20, 1913.]

C. F. CULVER, as Administrator of the Estate of Electus Serls, Deceased, Appellant, v. LOMPOC VALLEY SAV-INGS BANK (a Corporation), Respondent.

BANKS AND BANKING—DEPOSIT IN TRUST—RIGHTS OF SURVIVING BENE-FICIARY.—Where a man deposits money in a bank in the names of himself and the Children's Home Society, subject to payment upon his order or the order of the beneficiary, and instructs the bank to pay the residue upon his death to the beneficiary, a trust is thereby created in such residue in favor of the beneficiary, although the depositor makes additional deposits from time to time and with-draws various amounts therefrom.

ID.—CAPACITY OF BANK TO ACT AS TRUSTEE—SECTION 290½ OF THE CIVIL CODE.—The bank was not prohibited from acting as trustee by section 290½ of the Civil Code, for that section refers to corpora-tions formed after its enactment.

ID.—INCAPACITY OF TRUSTEE—EQUITY PREVENTS FAILURE OF TRUST.—But if the bank were without authority to execute the trust, a court of equity would not allow the trust to fail for that reason.

APPEAL from a judgment of the Superior Court of Santa Barbara County and from an order refusing a new trial.  S. E. Crow, Judge.

The facts are stated in the opinion of the court.

Jones & Weller, W. S. Day, and John T. Ryan, for Appel-lant.

A. E. Merrill, Will A. Gould, and Wm. G. Griffith, for Re-spondent.

SHAW, J.—Action by plaintiff, as administrator of Electus Serls, deceased, to recover the balance of a deposit of money made by Serls with defendant.

There was filed an agreed statement of facts, from which it appears that on November 21, 1906, Serls deposited a certain sum of money with defendant bank, which deposit, as directed by him, was made in the name of himself or the Children's Home Society of California, and at the same time he in-structed the officers of the bank, upon his death, to pay the same to said Children's Home Society of California; that said deposit, as directed, was so entered upon the books of the

bank in the name of Electus Serls or Children's Home Society of California; that thereafter Serls deposited other sums to said account and withdrew therefrom various sums of money, so that on May 28, 1908, there remained on deposit in said account the sum of $1,549.07, at which time said entire sum was by Serls, in the presence of and with the knowledge of A. H. Gunnett, agent of the Children's Home Society, checked out from the bank and by him, in like presence and with like knowledge, immediately deposited in said bank "in a new account, and the officials of said defendant were then and there instructed by said Electus Serls in the presence of and with the knowledge of said A. H. Gunnett, to make said deposit payable to said Electus Serls or Children's Home Society of California, and upon the death of said Electus Serls to pay the balance remaining in said deposit to said Children's Home Society of California; and that thereafter the said Electus Serls from time to time added to said account and withdrew therefrom various sums of money, so that on the 6th day of January, 1910, there remained on deposit in said account with defendant the sum of $2,239.35''; that on January 6, 1910, the defendant, with knowledge of the fact that Serls died on December 29, 1909, recognized the check of the Children's Home Society of California, drawn on said account, for the full amount thereof, and paid to it said sum of $2,239.35; that thereafter plaintiff's demand made upon defendant for payment was refused. In addition to the facts so stipulated, Mrs. Dimmock was called as a witness for plaintiff and testified that she was familiar with the business affairs of Serls, by reason of his having lived at her house, where he died, during the last year or so of his life; that the only bank book he had during said period was that upon defendant bank; that during the last year of his life, when he wished to draw money from the deposit so made with defendant, witness went to the cashier of defendant, telling him what the money was for, and the cashier drew the check, which she took to Serls, who signed it, and, with the bank book, witness presented it for payment. In September or October, 1909, Mr. Gunnett, admitted to be the representative of the Children's Home Society of California, had a conversation with Serls, at which witness was present and wherein she took part. Mr. Gunnett wanted Mr. Serls to

donate five hundred dollars toward the construction of a new home, to be called the "Serls Home." Mr. Serls said he would see about it. Gunnett asked witness her opinion, and she replied that Mr. Serls was not dead yet and that he might need his money to take care of himself; that Mr. Gunnett left, saying he would call later in the day for Mr. Serls's decision, and asked witness meanwhile to speak to Mr. Serls, stating that if she advised him so to do he would comply. Thereafter witness asked Serls what he intended to do about the check, in answer to which he replied that he would sign a check for no one; that he had given them enough already, and that if they could not wait until he was through with it they could go without. The witness repeated this conversation to the cashier of the bank.

Upon these facts the court granted defendant's motion for a nonsuit. Judgment followed for defendant, from which, and an order denying his motion for a new trial, plaintiff appeals.

We are unable to distinguish the facts of this case from those presented in the case of *Booth* v. *Oakland Bank of Savings,* 122 Cal. 19, [54 Pac. 370]; otherwise the able and exhaustive briefs filed by appellant would strongly appeal to us as justifying a reversal.

The desire and intention of Serls that the money from time to time deposited in this account, less what he might withdraw therefrom, should, at his death, be paid by the bank to the Children's Home Society, clearly appears. In this respect the case differs from that of *Denigan* v. *Hibernia Savings & Loan Society,* 127 Cal. 137, [59 Pac. 389], cited by appellant, wherein it was held that where the wife deposits her separate funds in a bank, making the account payable to herself or her husband, such fact standing alone is, after her death, insufficient to establish his right to the deposit, since it is consistent with a desire on the part of the wife to give the husband authority to withdraw the money for her use when needed.

As in the Booth case, it likewise appears in this that the deposit was made subject to payment upon the order of the depositor *or* the beneficiary named, to whom the bank, with knowledge of the beneficiary, was instructed by the depositor to pay the residue thereof upon the death of the depositor.

In neither case did the depositor divest himself of the right to check upon the deposit, but retained the pass-books and did from time to time make additional deposits in the accounts and withdrew various sums therefrom, with the result that in both cases the account at the time of the death of the depositor was larger than when the intention was declared and the instructions given, at the time when the account was opened. In neither case was it contemplated or intended that the beneficiary should draw checks upon the fund during the life of the depositor. In the Booth case, when the depositor was told that her sisters could draw the funds, she stated that "they would not do it"; and in the case at bar Serls, when asked to advance five hundred dollars to the Children's Home Society, said, "If they can't wait until I am through with it, they can go without," thus indicating the intention that his instructions to the bank to pay it to the Children's Home Society, at his death, should be carried out and executed.

There is no merit in appellant's contention that the bank was prohibited from acting as trustee by virtue of section 290½ of the Civil Code. This act was passed in 1905 and refers to corporations thereafter formed. Nor is there anything in the record showing that the bank was a savings bank, as contended by appellant. Moreover conceding that a bank is without authority to execute a trust, the principle is well recognized that a court of equity will not permit a trust to fail by reason of the inability of the one appointed to act as trustee therein. Conceding that evidence showing payment by the bank of the fund to the Children's Home Society to have been immaterial, it was not prejudicial, since in no event was plaintiff entitled to have it paid to him.

Since, upon our view of the facts presented, we feel bound by what was said upon a similar state of facts in the Booth case, no good purpose could be subserved by an extended discussion of the many authorities cited by appellant.

The judgment and order are affirmed.

Allen, P. J., and James, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 19, 1913.